UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BILLIE ASHLEY,

                Plaintiff,

      v.

STEPHEN SUTTON, *et al.*,

                Defendants.

No. CV 06-0063-MO

OPINION AND ORDER

**MOSMAN, J.,**

      This case arises out of an incident at a middle school basketball game in the city of Milton-Freewater. Plaintiff Billie Ashley's husband was ejected from their son's game for using profanity with a referee. School officials called the police, but Mr. Ashley left the building before Officer Stephen Sutton arrived. Billie Ashley had not been sitting with her husband during the game.

      During a break in the game, Ms. Ashley went to speak with the school principal about her husband's behavior. Officer Sutton approached Ms. Ashley and asked her for Mr. Ashley's name and their home address, but she refused to give him that information. Officer Sutton insisted that she do so, apparently believing it was a crime for her not to answer his questions. In the altercation that followed, Ms. Ashley was tasered, handcuffed, and arrested. She was later

-1-

convicted of resisting arrest and disorderly conduct. Ms. Ashley then brought suit[1] alleging

excessive force and illegal detention under 42 U.S.C. § 1983,[2] and a state law claim for battery.

The case went to trial on June 8, 2009, resulting in a verdict for the defense.

      I now consider Plaintiff's Motion for Reconsideration on Summary Judgment on Second

Claim and Motion for New Trial (#139).  Because the erroneous dismissal at summary judgment

of Ms. Ashley's illegal detention claim prejudiced her trial on the excessive force and battery

claims, I GRANT the motion. I also DENY defendant's cross-motion to reconsider summary

judgment on the § 1983 illegal detention claim (#144).

## BACKGROUND

      In prior proceedings, the factual circumstances of this case have been laid out in great

detail. (Findings and Recommendation (#46).) For purposes of this motion, the procedural

posture of this case is particularly relevant.

      On March 29, 2007, Magistrate Judge Hubel issued Findings and Recommendation

("F&R") (#46) on defendants' summary judgment motion. In his F&R, Judge Hubel found, as a

matter of law, that Officer Sutton had no lawful basis to detain Ms. Ashley or to arrest her for the

crime of interfering with a peace officer under Oregon Revised Statutes ("ORS") 162.247. (*Id.* at

---

[1]  The remaining defendants at trial included the City of Milton-Freewater, Officer Steve Sutton, and Chief of Police Michael Gallagher.

[2]  At various points in the proceedings, Ms. Ashley's claim has been characterized as a claim for wrongful arrest. I will characterize the claim as one of illegal detention, both because this is the language Ms. Ashley uses in her complaint and because Ms. Ashley seeks to challenge the validity of the initial stop as well as that of the arrest. (Compl. ¶¶ 29-31.)

22-26.)[3] For these reasons, Judge Hubel concluded that defendants were not entitled to summary judgment on either the illegal detention claim or the excessive force claim. (*Id.*)

Despite these findings Judge Hubel recommended that Ms. Ashley's illegal detention claim be dismissed under *Heck v. Humphrey*, 512 U.S. 477 (1994). (*Id.* at 26.) *Heck*, discussed in greater detail below, prohibits a plaintiff from raising a § 1983 claim when the claim would necessarily call the elements of a criminal conviction into question. *See* 512 U.S. at 486. Judge Hubel found that the illegal detention claim would undermine the validity of Ms. Ashley's criminal conviction for resisting arrest. (*Id.* at 35-36.) At this stage in the proceedings, Ms. Ashley argued that Oregon law did not allow her to defend the charge by asserting that the arrest was unlawful. It appears that Judge Hubel interpreted her argument as an attack on the validity of the conviction itself and concluded that the existence or absence of a defense does not render a conviction void. (*Id.* at 36-37.) Judge Hubel did not consider whether the absence of this particular defense implied that a lawful arrest is not an element of the crime of which Ms. Ashley was convicted.

Judge Haggerty adopted Judge Hubel's F&R in June 2007 and dismissed Ms. Ashley's illegal detention claim. (Order (#56).) Ms. Ashley's case proceeded to trial on the excessive force and battery claims. Because the illegal detention claim had been dismissed under *Heck*, Ms. Ashley was not permitted to argue to the jury that her detention and subsequent arrest had been unlawful. At the close of the two-day trial, the jury deliberated approximately ten minutes before reaching a verdict for defendants on June 9, 2009 (#123). Final judgment was rendered on July

---

[3] Although interfering with a peace officer was the basis for Ms. Ashley's arrest, the charge was later dismissed.

20, 2009 (#131).

## DISCUSSION

## I.   <u>Motion to Reconsider Summary Judgment</u>

Ms. Ashley moves the court to reconsider the grant of summary judgment as to her illegal detention claim. A motion for reconsideration under Federal Rule of Civil Procedure 59(e) may be granted if the district court committed clear error. *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). I conclude that, under Oregon law, a lawful arrest was not an element of Ms. Ashley's resisting arrest conviction. Therefore, Ms. Ashley's illegal detention claim did not invalidate an element of her state law conviction for resisting arrest, and the decision to dismiss the claim under *Heck v. Humphrey* was clear error of law.

Defendants have also moved the court to reconsider Judge Hubel's decision, adopted by Judge Haggarty, to deny summary judgment in their favor on the illegal detention claim. Because I conclude that material issues of fact remain with respect to the detention, I find no clear error of law and deny defendants' cross-motion for reconsideration of summary judgment.

### A.   *Dismissal of Illegal Detention Claim*

*Heck v. Humphrey* prohibits a plaintiff from raising a § 1983 claim when the claim necessarily undermines the validity of a criminal conviction. *See* 512 U.S. at 487. The Supreme Court further clarified that "invalidating" a criminal conviction means that a successful § 1983 action would call an element of the conviction into question. *Id.* at 487 n.6. The *Heck* doctrine essentially prevents a plaintiff from bringing a civil action to re-litigate an issue that was already

-4-

litigated, or could have been litigated, in a prior criminal trial.

In *Heck*, the Court provided an example of a situation in which its ruling would bar a §

1983 action:

> An example of . . . a § 1983 action . . . whose successful prosecution
> would necessarily imply that the plaintiff's criminal conviction was
> wrongful . . . would be the following: A state defendant is convicted
> of and sentenced for the crime of resisting arrest, defined as
> intentionally preventing a peace officer from effecting a **lawful** arrest.
> He then brings a § 1983 action against the arresting officer, seeking
> damages for violation of his Fourth Amendment right to be free from
> unreasonable seizures. In order to prevail in this § 1983 action, he
> would have to negate an element of the offense of which he has been
> convicted. Regardless of the state law concerning res judicata, the §
> 1983 action will not lie.

*Id.* (internal citations omitted) (emphasis added).

When he adopted Judge Hubel's F&R over Ms. Ashley's objections, Judge Haggarty found

that the *Heck* hypothetical was directly relevant to Ms. Ashley's § 1983 claim. He noted that "*Heck*

. . . addressed the precise, and independent, situation presented here," and agreed with Judge Hubel

that Ms. Ashley's claim was barred by *Heck*. (Order (#56) at 3-4.)

But *Heck*'s example is distinguishable from this case because *Heck* borrowed its

hypothetical crime of resisting arrest from New York law. *See Heck*, 512 U.S. at 487 n.6. Ms.

Ashley was convicted of resisting arrest in Oregon, where the crime is defined differently.

Whereas a lawful arrest is an element of the hypothetical crime described in *Heck*, under Oregon

law, "[a] person commits the crime of resisting arrest if the person intentionally resists a person

known by the person to be a peace officer or parole and probation officer in an making arrest."

ORS 162.315(1). The Oregon Supreme Court has interpreted the statute as prohibiting a person

from resisting an <u>unlawful</u> arrest. *State v. Wright*, 799 P.2d 642, 643 (Or. 1990).

In addition to the language defining the crime itself, the Oregon statute specifically provides that lack of legal authority to make an arrest is <u>not</u> a defense to prosecution. ORS 162.315(3). If lack of legal authority is not a defense, a lawful arrest cannot be an element of the crime of resisting arrest. Because Oregon law specifically prohibits raising the legality of the arrest as a defense to prosecution, a criminal defendant's only opportunity to challenge the legality of the arrest is to file a civil action. *See Wright*, 799 P.2d at 644. The decision to dismiss Ms. Ashley's illegal detention claim did not deny her a second chance to challenge the legal authority for her arrest; it denied her only chance.

I conclude that Ms. Ashley may question the validity of the stop and arrest without questioning the resisting arrest conviction.[4] For this reason, I conclude it was clear error to grant summary judgment and dismiss Ms. Ashley's illegal detention claim.

### B.    *Summary Judgment on the Illegal Detention Claim*

In their response to Ms. Ashley's motion for reconsideration, defendants cross-move for reconsideration of the order denying them summary judgment on the illegal detention claim. Even though Officer Sutton lacked reasonable suspicion to seize or detain Ms. Ashley, defendants might be entitled to summary judgment if they could show either that Officer Sutton could legally compel Ms. Ashley to his questions, even in the absence of reasonable suspicion, or

---

[4]  Neither Judge Hubel nor Judge Haggarty addressed whether the illegal detention claim would invalidate Ms. Ashley's other conviction for disorderly conduct. If Ms. Ashley's claim required her to prove that Officer Sutton lacked probable cause to arrest her for disorderly conduct, then that claim would be barred by *Heck v. Humphrey.* I conclude, however, that it is possible for Ms. Ashley to frame her claim in a way that would challenge the legality of the detention at some earlier time without drawing her disorderly conduct conviction into question.

that Ms. Ashley was not seized or detained until she was actually handcuffed and formally arrested for disorderly conduct and resisting arrest. I conclude that neither Judge Hubel nor Judge Haggerty committed clear error in concluding that defendants were not entitled to summary judgment on either ground and therefore deny defendants' motion for reconsideration.

### 1.    Summary Judgment Standard

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the record in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the movant initially shows that no genuine issue exists for trial, the non-movant cannot then rest on the pleadings but must respond with evidence setting forth "specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party has the "burden of advertising [sic] to 'specific facts showing that there is a genuine issue for trial.' . . . It is not the district court's job to sift through the record to find admissible evidence in support of a non-moving party's case." *Claar v. Burlington N. R.R. Co.*, 29 F.3d 499, 504 (9th Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted).

2.      **Discussion**

It is undisputed that Officer Sutton approached Ms. Ashley and asked for her husband's name and address. When Ms. Ashley refused to provide this information, Officer Sutton told her that he could arrest her for the crime of interfering with a peace officer under ORS 162.247.[5] An altercation followed, which became the basis for Ms. Ashley's convictions for disorderly conduct and resisting arrest, as well as her excessive force and battery claims. During the altercation, Ms. Ashley was tasered, handcuffed, and formally placed under arrest. Aside from these facts, many of the events that occurred before Officer Sutton approached Ms. Ashley and after Ms. Ashley refused to answer his questions are still unclear.

Defendants' cross-motion for summary judgment raises the following issues: (a) Could Officer Sutton could legally compel Ms. Ashley to answer his questions, even without reasonable suspicion? and (b) Was Ms. Ashley seized or detained prior to her formal arrest, and if so, when?

a)      **Could Officer Sutton Legally Compel Ms. Ashley to Answer His Questions?**

When Officer Sutton approached Ms. Ashley, he had no reasonable suspicion that she was either involved in criminal activity or a witness to a crime. Nevertheless, defendants rely on *Hiibel v. Sixth Judicial District Court of Nevada*, 542 U.S. 177 (2004)*, and *Illinois v. Lidster,* 460 U.S. 491 (1982), to support their argument that Officer Sutton could legally require Ms. Ashley to provide her husband's name and address – even in the absence of reasonable suspicion.

---

[5]  In fact, refusing to answer questions does not constitute the crime of interfering with a peace officer under Oregon law because the Oregon statute requires a physical act of interference. *See State v. Lam*, 29 P.3d 1206, 1211 (Or. Ct. App. 2001) (holding that the statute does not prohibit speech alone, and by implication, the failure to speak).

Neither case suggests that Officer Sutton had a right to detain Ms. Ashley as a matter of law.

Under the Fourth Amendment, an individual is "seized" when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). An officer may constitutionally seize a person if the officer has "articulable facts supporting a reasonable suspicion that a person has committed a criminal offense." *Hayes v. Florida*, 470 U.S. 811, 816 (1985). During the brief seizure, or "*Terry* stop," the officer may question the individual and require the individual to identify him or herself. *Hiibel*, 542 U.S. at 186.

This case is distinguishable from *Hiibel*, in which a criminal suspect was required to reveal his identity in the context of a valid *Terry* stop. 542 U.S. at 186. Here, Officer Sutton admitted he had no factual basis to believe that Ms. Ashley was either a suspect or a witness. (Warren Decl. (#25), Ex. 2 at 18, 22-23.) Judges Hubel and Haggarty found as a matter of law that Officer Sutton did not have reasonable suspicion to detain Ms. Ashley to question her. (F&R (#46) at 23; Order (#56) at 6.) Because Officer Sutton did not question Ms. Ashley in the context of a valid *Terry* stop, he could not compel her to disclose her identity, let alone her husband's name and address.

Although the defendants rely heavily on *Illinois v. Lidster*, that case does not sanction involuntary detention of potential witnesses. In *Lidster*, the Supreme Court held that motorists could be stopped without reasonable suspicion at a highway checkpoint to request their help in solving a fatal hit-and-run case. 540 U.S. at 426-27. The Court reasoned that, if officers could stop pedestrians to ask for their help in solving a crime, motorists could be stopped briefly for the same reason. The ruling relies heavily on the principle that "the law ordinarily permits police to

seek the <u>voluntary</u> cooperation of members of the public in the investigation of a crime." *Lidster*, 540 U.S. at 425. *Lidster* did not address a situation where a motorist had been stopped without reasonable suspicion and then detained and compelled to assist the police despite refusing to do so. Here, the parties agree that Ms. Ashley did not agree to help Officer Sutton gather information about her husband. (Defs.' Statement of Undisputed Material Facts (#23) ¶ 6.) After Ms. Ashley refused to cooperate, *Lidster* does not provide legal justification for Officer Sutton to detain her and compel her cooperation.

> **b)    Was Ms. Ashley Seized or Detained Prior to Her Formal Arrest, and If So, When?**

Defendants contend that Ms. Ashley could not have been seized by Officer Sutton prior to her formal arrest because Ms. Ashley ran away from Officer Sutton instead of submitting to his authority. This argument was also raised in defendants' objections to Judge Hubel's F&R, but Judge Haggarty found that "[d]efendants' interpretation of the facts regarding plaintiff's arrest fail to establish that defendants are entitled to judgment as a matter of law." (Order (#56) at 6.) I agree.

The record is not clear about the events that occurred after Officer Sutton approached Ms. Ashley and before she was arrested. Viewing the evidence in the light most favorable to the non-moving party, a seizure or detention could have occurred at various points between Officer Sutton's approach and the formal arrest. The parties dispute the manner in which Officer Sutton approached Ms. Ashley, indicating that a seizure or detention could have happened as early as that time. A seizure or detention may also have occurred when Officer Sutton told Ms. Ashley that she could be arrested for interfering with a peace officer if she refused to answer his

-10-

questions.

The parties also dispute the events that occurred after Ms. Ashley refused to answer Officer Sutton's questions. Officer Sutton claims that he told Ms. Ashley that she was under arrest and took her arm to escort her to his patrol car. He claims that Ms. Ashley then shook free and began walking away toward the school gym. Ms. Ashley asserts that she walked toward the gym to get her purse. Whether Ms. Ashley's actions can be characterized as fleeing from Officer Sutton's authority, and whether Officer Sutton seized or detained her at that time, are factual questions not appropriate for summary judgment here.

## II.   <u>Motion for a New Trial</u>

Ms. Ashley has also moved for a new trial on the excessive force and battery claims under Rule 59(a). She argues that it was error to exclude testimony, argument, and jury instructions regarding whether Ms. Ashley was lawfully detained by Officer Sutton. I conclude that excluding this evidence was an error of law. The error prejudiced Ms. Ashley by preventing the jury from receiving the full picture of the interaction between Ms. Ashley and Officer Sutton.

A court may grant a new trial on grounds of error if the error is prejudicial to a party. *See* Fed. R. Civ. P. 59(a)(1), Fed. R. Civ. P. 61; *see also Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990) ("The trial judge is ultimately responsible for the conduct of the litigation, and is also responsible for ensuring that a party is not a victim of a miscarriage of justice."). As discussed above, the decision to dismiss Ms. Ashley's illegal detention claim was an error of law. The error was prejudicial to Ms. Ashley's case because it prevented her from contesting the legality of the arrest during the trial for excessive force and battery. All argument

-11-

about whether Officer Sutton had probable cause to arrest Ms. Ashley was excluded based on the *Heck* rationale that challenging the lawfulness of her arrest would invalidate her state law convictions. Specifically, Ms. Ashley was precluded from arguing that Officer Sutton lacked legal authority to detain her and that this illegality lessened his right to use reasonable force during the arrest.

Ms. Ashley also proposed jury instructions that outlined the legal standard for detaining a person for questioning. These instructions were omitted because the detention could not be challenged. Without these instructions, the jury may have been left with the misleading impression that Ms. Ashley was required to answer Officer Sutton's questions, and he could legally compel her to answer if she refused to do so.

## CONCLUSION

For the foregoing reasons, I GRANT Plaintiff's Motion for Reconsideration on Summary Judgment on Second Claim and Motion for New Trial (#139) and DENY defendant's cross-motion for reconsideration of summary judgment (#144).

IT IS SO ORDERED.

DATED this   8th   day of October, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court